UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUGUST MCKINLEY WILLIAMS,

       Plaintiff,

                                    Case No. 1:06-CV-837
v.                                  Hon. Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

This matter is before the court on defendants' motion to dismiss and for summary judgment (docket

no. 18).

**I.      Background**

Plaintiff's allegations have been summarized in a previous Report and

Recommendation, which recommended the dismissal of plaintiff's claims:

      Plaintiff is presently incarcerated at the Bellamy Creek Correctional Facility
(IBC).  In his *pro se* complaint, he sues the Michigan Department of Corrections
(MDOC) and the following IBC employees: Anna Estes, Library Technician; Delan
Howard, Corrections Officer; D. Angel, Corrections Officer; and Debra Drake,
Assistant Resident Unit Supervisor.

      Plaintiff complains of the confiscation of his state habeas corpus petition
pursuant to MDOC policy that prohibits prisoners from receiving mail regarding
Uniform Commercial Code (UCC) actions.  *See* MICH. DEP'T OF CORR., Policy
Directive 05.03.118, ¶ HH(23) (effective Jan. 1, 2006) (Prohibiting prisoners from
receiving mail regarding UCC actions because they could be used to harass or
threaten another individual).  In July 2005, Plaintiff filed a habeas petition in Ionia
County Circuit Court.  Shortly thereafter, Plaintiff attempted to make copies of the
petition and its supporting documents for service on IBC Warden Kenneth McKee.

After reviewing the petition, however, Library Technician Estes requested Correction Officers Howard and Angel to examine Plaintiff's pleadings for restricted UCC material. Officers Howard and Angel subsequently removed several pages of the pleadings from Plaintiff's possession. Although Plaintiff urged Officers Howard and Angel that he was required to serve a copy of the pleadings upon the respondent, Officer Angel refused. Officer Angel responded: "[A] habeas corpus action held [sic] no merit 'here' and we don't have to pay any attention to any order issued by any court." (Attach. to Compl. at 4-5.)

Library Technician Estes ultimately confiscated two pages of the pleadings as contraband and initiated a Notice of Intent to Conduct an Administrative Hearing against Plaintiff. Corrections Officer Angel also confiscated forty-one pages of Plaintiff's pleadings as contraband and issued a Notice of Intent to Conduct an Administrative Hearing against Plaintiff. On July 29, 2005, Corrections Officer Drake held two "informal" administrative hearings, finding that Plaintiff's habeas petition was an attempted UCC action in both hearings. (Attach. to Compl. at 5-6.) Defendant Drake therefore ordered all of the confiscated pages to be destroyed. Nevertheless, Plaintiff alleges that IBC staff requested the return of Plaintiff's pleadings on August 17, 2005 but Plaintiff never received twelve pages of his pleadings and research.

Plaintiff alleges that Defendants violated his First Amendment right of access to the courts and to file grievances without suffering retaliation. Plaintiff also argues that Defendants engaged in a conspiracy to deprive him of access to the courts. For relief, Plaintiff requests declaratory and injunctive relief, as well as monetary damages.

Report and Recommendation (Jan. 16, 2007).

The court adopted the report and recommendation in part, dismissing all of plaintiff's

claims except his count for retaliation, which it characterized as follows:

With regard to his retaliation claim, Plaintiff contends that the magistrate judge improperly concluded that Plaintiff failed to allege a causal connection between his filing of his state habeas case and the confiscation of his legal materials by Defendants. The magistrate judge reached this conclusion based upon his reasoning that Defendants have no interest in Plaintiff's habeas action against the warden. Plaintiff alleged, however, that Defendants confiscated his materials in order to protect the warden from Plaintiff's action. The Court agrees with Plaintiff that he has alleged sufficient facts to state a retaliation claim against Defendants. While Defendants may ultimately show that they confiscated the materials based upon the MDOC's policy against allowing prisoners to possess UCC materials rather than

2

based upon retaliatory motives, at this point, Plaintiff's retaliation claim must be
allowed to proceed.

Order (March 9, 2007).

This matter is now before the court on defendants' motion to for summary judgment

on plaintiff's remaining retaliation claim (docket no. 18).

## II.      Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal

right of action against any person who, acting under color of state law, deprives an individual of any

right, privilege or immunity secured by the Constitution or federal laws.   *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim,

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law.

*Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate under Rule 56(b) "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the

court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to
> support the nonmoving party's case.  Once the moving party has met its burden of
> production, the nonmoving party cannot rest on its pleadings, but must present
> significant probative evidence in support of the complaint to defeat the motion for
> summary judgment. The mere existence of a scintilla of evidence to support
> plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt the non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

## III.    Plaintiff's retaliation claim

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute;  2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).  *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Defendants contend that plaintiff has failed to meet the second element (adverse action) and third element (causal connection or motivating factor) of a retaliation claim.

### A.    Adverse action

Defendants contend that the alleged confiscation of the UCC materials did not constitute the requisite "adverse action" to establish a retaliation claim.

Plaintiff's complaint initially failed to allege that he suffered any adverse action from the confiscation.  In his "reply" to the motion, plaintiff asserts that plaintiff suffered an adverse action from the "the confiscation and destruction of his non-UCC contraband documents."  Reply

4

at 7.  The confiscation of plaintiff's "non-UCC" legal papers related to his state habeas suit constitutes an injury sufficient to support a First Amendment retaliation claim, since it was more than a *de minimis* act of harassment.  *See discussion in Bell v. Johnson*, 308 F.3d 594, 604-07 (6th Cir. 2002) ("confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim").  Accordingly, plaintiff has alleged a sufficient adverse action in this suit.

### B.    Motivating factor

To meet the third element of a retaliation claim, "plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *See Smith v. Campbell*, *supra* at 1037.  Thereafter, the burden shifts to the defendant:

> The analysis of motive in retaliation claims is well-developed. Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X v. Blatter*,  175 F.3d 378, 399 (6th Cir.1999) (en banc) (footnote omitted).

### 1.    Prohibitions to curtail prisoner abuse of the UCC

In light of the court's finding in its March 9, 2007 Order, *infra,* that plaintiff has alleged sufficient facts to state a retaliation claim against defendants, the burden shifts to defendants to show that they confiscated plaintiff's legal materials based upon MDOC policy prohibiting prisoners from possessing UCC materials rather than because of retaliatory motives.  *Id.* Defendants, in fact, contend that the confiscation was not motivated by plaintiff's conduct in filing

a habeas corpus petition against the Warden, but was enforcement of the MDOC regulations to

prevent fraudulent UCC filings by prisoners.  As this court recognized in *Hudson v. Caruso*, No.

1:05-cv-32, 2007 WL 2363308 (W.D. Mich. Aug. 16, 2007), prisoners have repeatedly used

fraudulent UCC filings to harass, intimidate and obtain payments from government officials:

> The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See, e.g., United States v. Gordon*, No. CV 205-158, 2005 WL 2237640 (S.D.Ga. Aug.25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego*, No.04 CV 0008 SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams*, No. CV-04-863-HU, 2005 WL 697041 (D.Or. Mar.24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin*, 356 F.Supp.2d 621 (W.D.Va.2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum*, No. CIV. A. 105CV110, 2005 WL 1606584 (E.D.Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald*, No. 2:05 CV 111, 2005 WL 1427718 (W.D.Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder*, No. 3:04-1044, 2005 WL 2715666 (M.D.Tenn. Sept.2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00).

*Hudson*, 2007 WL 2363308 at *5.  *See also*, Defendants' Appx. at 64-175.

Richard Stapleton, Administrator of the Office of Legal Affairs at the MDOC, stated

in his affidavit that in response to these false or fraudulent UCC filings by prisoners, the MDOC

adopted DOM 2004-8 to prohibit prisoners from possessing material regarding actions that can be

taken under the UCC, except for publications in the law library that set forth the statute or provide

a scholarly legal analysis of the UCC.  Defendants' Appx. at 65-67.

DOM 2004-08 was superseded by DOM 2005-4 (effective January 1, 2005). Defendants' Appx. at 176. DOM 2005-4 contained the same operative provisions of DOM 2004-8. *Id.* at 176-79. These DOM's specifically identified the practice of prisoners "copyrighting" their names with the use of the "©" mark and demanding payment for use of their names as harassment and an unauthorized use of UCC materials. Specifically, DOM 2005-4 provided in pertinent part as follows:

> Last year, there was increased activity by prisoners engaging in various schemes involving the Uniform Commercial Code (UCC). This activity is not unique to this Department or to prisoners. These schemes include "copyrighting" names and making demands for money whenever the name is used by another, preparing fraudulent drafts or bills of exchange, and filing fraudulent liens in order to harass staff, prosecutors, judges and others. Such activity by prisoners within the Department is clearly harassment and, in many cases, a felony.

> As a result of the above activities, prisoners are no longer authorized to have any books, pamphlets, forms or other material regarding actions that can be taken under the UCC; these materials shall be considered contraband since they can be used to facilitate criminal activity and pose a risk to the custody and security of the facility. (This does not include publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the statute or provide a scholarly legal analysis of the UCC.) Often times, the material received by or from prisoners may be difficult to understand or interpret; however, the material almost always specifically references the UCC. The material also may identify parties as being a guarantor, debtor or a secured party and may discuss the filing of liens, financial statements or other documents with the Secretary of State. (Special attention should be given to any mail from the Secretary of State that is received for a prisoner.) Some material may reference the Federal Tax Lien Act of 1966, a Notice of Bona-Fide Tax Lien, a Refusal for Cause, or a Bill of Exchange. Although the use of a copyright mark (i.e., © ) by a prisoner's name is not in and of itself prohibited, it is often included in material in which prisoners are demanding payment from staff for using the copyrighted name and in other material prohibited by this DOM.

> Prisoners shall not be permitted to use funds in their institutional account to purchase material prohibited by this DOM. In addition, material prohibited by this DOM shall be rejected in accordance with Michigan Department of Corrections (MDOC), Policy Directive 05.03.118 "Prisoner Mail" if received through the mail for a prisoner or confiscated in accordance with Michigan Department of Corrections (MDOC), Policy Directive 04.07.112 "Prisoner Personal Property" if found in the

7

possession of a prisoner.  This includes confiscating such material if presented to staff for notarization or photocopying. . .

Defendants' Appx. at 178-79.

In addition to DOM 2005-4, Policy Directive 05.03-118 (effective 6/6/2005) limited prisoner "mail" involving the UCC.  Policy Directive 05.03.118 ¶ A defined "mail" as:

Any written, typed or printed communication of information, including magazines, catalogs, books and photographs.  Stamps, stickers, and similar items do not communicate information and thus are not considered mail for purposes of this policy even if delivered through the mail.

*Id.* at 180.

In addition, Policy Directive 05.03.118 ¶ HH 22 prohibited the following mail related to the UCC:

**POLICY STATEMENT:**

Mail to or from prisoners in a Correctional Facilities Administration (CFA) or Field Operations Administration (FOA) facility shall be processed as set forth in this policy. . . .

HH.   Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner.  The following pose such risks within a correctional facility under all circumstances and therefore shall be rejected: . . . .

22.   Mail regarding actions that can be taken under the Uniform Commercial Code (UCC).  This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

*Id.* at 185-86.[1]

_____

[1] Defendants note that a court has enjoined enforcement of a similar legal mail prohibition as set forth in Policy Directive 05.03.118 ¶ HH 23 (effective January 1, 2006).  Defendants' Appx. at 196-97.  However, because the alleged retaliation in the present case occurred in July 2005, before the effective date of the superseding Policy Directive, neither that directive nor the injunction are relevant for purposes of this motion.

2.  **Plaintiff's state habeas petition, copyright notice, and his $400,000.00 fee for the unauthorized use of his name**

The record reflects that plaintiff signed his state habeas petition and a "common law copyright notice" on July 11, 2005.  Defendants' Appx at 42.  The habeas petition was filed on July 13, 2005.  *Id.* at 35.  In his petition, plaintiff alleged that he was entitled to habeas relief because the Saginaw County District Court "never properly acquired jurisdiction over the Natural Person August Lavern Williams (C) in the offense as charged."  *Id.* at 37.  Rather, the state's "charging instrument" named "an aggregate item of property as the Defendant," which plaintiff identified as "August McKinley Williams."  *Id.*  Plaintiff further alleged that because "August LaVern Williams (C), a Natural Person" had an "interest in the aggregate property AUGUST MCKINLEY WILLIAMS," he could not have "constructively appeared <u>as</u> the described aggregate property AUGUST MCKINLEY WILLIAMS."  *Id.* (emphasis in original).

On July 13, 2005, the state court entered an Order to Show Cause why the writ should not be issued against Warden McKee, in *August Lavern Williams #232795 v. Kenneth McKee, Warden*, Ionia Cir. Ct. No. 05-M-24209-AH.  *Id.* at 40.  That same day, the court mailed the order to show cause to Warden McKee, which he received on July 18, 2005. *Id.* at 27, 31-32.  The Warden promptly requested representation from the Michigan Department of Attorney General.  *Id.* at 27.

In her affidavit, defendant Estes, a Librarian Assistant at the Bellamy Creek Correctional Facility (IBC) stated that she is authorized to copy prisoners' legal materials.  *Id.* at 2. On July 19, 2005, she reviewed about 41 pages of documents for plaintiff.  *Id.* at 2-3.  She did not see a Petition for Writ of Habeas Corpus, but confiscated two documents that were "clearly UCC." *Id.* at 2-3.  She advised plaintiff that the documents were contraband per MDOC DOM 2004-8 and 2005-4.  *Id.* at 3.  Plaintiff objected and stated that "all the pages were for a Habeas Corpus."  *Id.*

She informed defendants Howard and Angel that plaintiff had presented UCC materials for copying and that they might want to shake him down to see if they could find more UCC materials. *Id.* Defendant Estes wrote a Notice of Intent to Conduct an Administrative Hearing (NOI) on the two confiscated pages. *Id.* She further stated that "[a]ny documents where Warden McKee's name would have appeared had no impact on my decision to confiscate said documents from the plaintiff or anyone else." *Id.*

In his affidavit, defendant Angel, a corrections officer, stated that pursuant to DOM 2005-4 he confiscated certain papers from plaintiff "that appeared to pertain to UCC actions." *Id.* at 7. After defendant Estes informed him that she had confiscated some UCC materials from plaintiff, he conducted a through search of plaintiff and "confiscated several pages" of what he believed to be "UCC paperwork." *Id.* Angel provided plaintiff with an NOI on the confiscated materials and turned them over to a deputy warden. *Id.* Defendant Angel's contraband removal record from July 19, 2005 indicates that he confiscated "seven original (pages copies) of an (order to show cause regarding writ of habeas corpus) [sic]" and four sets of copies of these papers totaling 28 pages. *Id.* at 9. Defendant Angel further stated that "All documents are believed to pertain to the U.C.C. code as when read, the final page discusses the copyright owner of the name August McKinley Williams." *Id.* Angel also confiscated nine pages "of legal paperwork appearing to deal with [filing] such a writ." *Id.* Defendant Angel further stated that a document with the Warden's name on it "has no bearing [sic] to confiscate any document" from plaintiff, that the documents pertained to UCC and that he "was under orders to confiscate any UCC documentation." *Id.*

In his affidavit, defendant Howard, arsenal sergeant, stated that had no recollection of the events alleged by plaintiff, or plaintiff's claim that on July 19, 2005, defendant Estates

allowed him to read plaintiff's "pleadings against the Warden." *Id.* at 12. Howard states that he was the yard Sergeant that day, a position that did not directly supervise defendant Estes. *Id.*

In her affidavit, defendant Drake, a case manager, stated that she received two groups of papers belong to plaintiff along with NOI's. *Id.* at 15. She reviewed the materials page by page and the applicable DOM 2004-8 (substantively the same as DOM 2005-4), and it appeared that the pages contained "annotation and use of UCC information." *Id.* at 16. She found that plaintiff's use of "copyrighter name" to fulfill the standards of contraband UCC material under the DOM. *Id.*

In a letter dated July 28, 2005, the state court judge advised plaintiff as follows:

I am in receipt of your letter dated July 19, 2005. In response to that letter, I must advise you that the Order to Show Cause has been served on the Defendant as per the proof of service on the bottom of the letter.

*Id.* at 60.

On July 29, 2005, defendant Drake acted as plaintiff's informal hearings officer, reviewed DOM 2004-8 and MDOC Policy Directive 05.03.118 regarding UCC contraband, and listened to plaintiff's rebuttal that she was "evading service of the [habeas] papers on Warden McKee." *Id.* at 16. At that time, plaintiff "indicated that the copywriter notice may or may not be a necessary part of the documents." *Id.* In an Administrative Hearing Report, defendant Drake found that two pages confiscated by defendant Estes:

do represent Prisoner Williams utilizing the UCC codes to copywrite his name. Use or possession of UCC materials of any kind are prohibited by DOM 2004-8 and are to be declared contraband according to Michigan Department of Corrections (MDOC), Policy Directive 04.07.112 as unallowable property.

*Id.* at 22. Defendant Drake also found that the 44 pages confiscated by defendant Angel represent an attempted court action on UCC usage and that "although not all of the pages are individually

11

including statements of UCC nature, they are part of the petition and [sic] Habeas Corpus and as

such are part of the UCC material." *Id.* at 20.

  The Ionia Circuit Court subsequently dismissed plaintiff's petition for writ of habeas

corpus on October 7, 2005 with the following order:

> The Plaintiff prisoner having filed a complaint for a writ of habeas corpus
> attacking the legality of his criminal convictions and sentences; counsel for the
> Defendant Department of Corrections having filed a brief in opposition to the
> complaint; and Petitioner having filed his response;

> IT IS ORDERED that the complaint is DISMISSED with prejudice for the
> reasons stated in Defendant's brief. In compliance with MCR 2.602(A)(3), the Court
> finds this decision resolves the last pending claim and closes the case.

*Id.* at 43-44.

  In his affidavit, plaintiff states that his use of the "copyright notice" was entirely

innocent, stating in pertinent part that:

> 4.  I use the "(C)" notation to indicate my political protest . . .

> 5.  I common law copyrighted the title of a book "AUGUST LAVEN [sic]
> WILLIAMS" in 2005.

> 6.  I stipulate that the damage amount for violation of the copyright of the book
> "AUGUST LAVERN WILLIAMS" is a flat fee of $400,000 for unauthorized
> quotation, publish [sic], use, etc. . .

> 7.  I have registered the book "AUGUST LAVERN WILLIAMS" with the U.S.
> Library of Congress.

>    *   *   *

> 10.  I changed my name under Common Law from August McKinley Williams to August
> LaVern Williams.

> 11.  I filed the "ATTACHMENT A" Common Law Copyright Notice and name
> change with my habeas corpus Petition to illustrate a technicality of the
> requirements of a criminal Complaint as to how to identify a defendant.

12.     I did not file a Habeas Corpus Petition with the intent to convert it into a Uniform Commercial Code (UCC) Action.

Plaintiff's Aff. attached to Reply.

Plaintiff's statements regarding the nature of his copyrighted name are blatantly contradicted by his own court documents, such that no reasonable jury could believe it. *Scott*, 127 S. Ct. at 1776. In the Ionia Circuit Court proceeding, plaintiff identified himself as "August LaVern Williams (C)." These documents included his "common law copyright notice" which: explicitly refers to "the spelling of said name;" requires all users of his name to pay $400,000.00 "for every unauthorized use of the said common-law copyright name August LaVern Williams (C);" and that if a "User" of this name fails to pay the "unauthorized use fee" within 28 days, then the "User's accounts, real property, tangibles and intangibles will be subjective [sic] to a strict foreclosure payment for intentional default."

Furthermore, plaintiff filed his § 1983 complaint in this court under the name "August LaVern Williams ©," notwithstanding that he was convicted and is incarcerated under the name "August McKinley Williams."

Nowhere in these court documents does plaintiff refer to an alleged book, which, by coincidence, bears his allegedly "copyrighted" name. Plaintiff's "copyright notice" for his alias of "August LaVern Williams ©," which he admits was included as "Attachment A" to the habeas corpus petition, is typical of schemes used by individuals to create false debts secured by false liens under the UCC. *See, e.g., United States v. Orrego*, No. 04-cv-0008, 2004 WL 1447954 at *2 (E.D.N.Y. June 22, 2004) (defendant filed false liens against judge and other government officials, claiming that he had "copyrighted" his name and that these individuals had used his name in fulfillment of their official duties in official documents without first obtaining permission to do so).

13

Finally, the court takes judicial notice that plaintiff registered a copyright for "August LaVern Williams" on October 26, 2005.  *See* Copyright Catalog (1978 to present), accessed at www.cocatalog.loc.gov.  The government records indicate that this particular registration was catalogued only from the application submitted by the registrant.  Plaintiff has presented no evidence of the actual "text" that he registered in the copyright office.  Even if plaintiff applied to register a copyright for a text other than his name, this evidence does not change the court's analysis.  Plaintiff did not register the copyright for "August LaVern Williams" until October 26, 2005.  This registration occurred long after the fact, i.e., 19 days <u>after</u> the Ionia Circuit Court dismissed his habeas petition and nearly two months after he filed his Step III appeal of the underlying grievance in this suit.  *See* Defendants' Appx at 43-44; Plaintiff's Aff. (docket no. 2).  Furthermore, plaintiff's papers clearly sought to enforce the use of his allegedly copyrighted name, not a book.

Viewing the facts in the light most favorable to plaintiff, there is no genuine issue of material fact to dispute that plaintiff placed documents in his habeas petition that were contraband and calculated to harass or intimidate government officials. Defendants have  shown that they properly confiscated this contraband pursuant to MDOC DOM's and Policy Directives, and that they would have done so even in the absence of the alleged protected activity or the reference to the warden.  Accordingly, defendants are entitled to summary judgment.

## IV.    RECOMMENDATION

I respectfully recommend that defendants' motion for summary judgment (docket no.

18) be **GRANTED** and that plaintiff's suit be **DISMISSED**.


Dated:  January 10, 2008                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within ten (10) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).